UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HARRY J. MILLER, Jr.,

                        Plaintiff,        **No. 6:14-cv-06331(MAT)**
                                                 **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.

---

## I. Introduction

Represented by counsel, Harry J. Miller, Jr. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II. Procedural Status

Plaintiff protectively filed an application for DIB on April 17, 2011, T.156-62, 207, alleging an onset date of November 13, 2010, and a date last insured of March 31, 2012. He protectively filed for SSI on April 12, 2011, T.163-73, 184, alleging an onset date of November 13, 2010. The bases for both were a mental disorder, a digestive problem, and obesity. T.92.

After both applications were denied, T.88-95,[1] Plaintiff requested a hearing which was held before administrative law judge Stanley K. Chin ("the ALJ") on October 17, 2012. Plaintiff appeared with counsel and testified, as did a vocational expert. T.19-42. On November 30, 2012, the ALJ issued a decision finding Plaintiff not disabled under the Act. T.65-81. This decision became the Commissioner's final decision on April 24, 2014, when the Appeals Council denied Plaintiff's request for review. T.1-6. This timely action followed.

Plaintiff has moved for judgment on the pleadings (Dkt ##7, 9) pursuant to Rule 12(c) of the Federal Rule of Civil Procedure, seeking reversal for immediate calculation and payment of benefits. The Commissioner has cross-moved for judgment on the pleadings (Dkt #8), seeking affirmance of the Commissioner's decision. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual recitations contained in the parties' briefs (Dkt ##7-1, 8-1). The record evidence will be discussed in further detail as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for calculation and payment of benefits.

---

[1] Numbers preceded by "T." refer to pages from the administrative transcript, submitted by Defendant as a separately bound exhibit.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

**IV. The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. T.69-70. The ALJ found at step one that Plaintiff had worked after his May 1, 2009, amended alleged onset date of disability, but had not engaged in substantial gainful activity. T.70. At the step two, the ALJ determined that Plaintiff had the following "severe" impairments:

bipolar disorder, impulse control disorder, mild mental retardation, gastroesophageal reflux disease ("GERD"), and morbid obesity. T.70. At step three, the ALJ found that Plaintiff's impairments neither met nor equaled one of the impairments listed in Appendix 1, 20 C.F.R. Part 404, Subpart P ("the Listings"). T.71. In particular, the ALJ considered Listings 12.04 (Affective Disorders), 12.05 (Mental Retardation), and 12.08 (Personality Disorders). T.72-73. With regard to Listings 12.04 and 12.08, the ALJ found that Plaintiff has "mild" restriction in activities of daily living, "moderate" difficulties in social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. T.71-72.

With regard to Listing 12.05, the ALJ found that while Plaintiff's IQ scores "may establish subaverage general intellectual functioning," his "level of functioning does not evidence deficits in adaptive functioning." T.73. Therefore, the ALJ found, Plaintiff did not meet the diagnostic description in the introductory paragraph of Listing 12.05.

The ALJ proceeded to evaluate Plaintiff's residual functional capacity ("RFC") and concluded that he retains the ability to perform work at all exertional levels except that he cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl;

can occasionally walk on uneven terrain; can perform simple, routine, repetitive tasks in a work environment that is not fast paced and involves only simple work-related decisions and routine workplace changes; and can occasionally interact with the public, coworkers, and supervisors. T.73.

At step four, the ALJ determined that Plaintiff's RFC precludes performance of his past relevant work as a housekeeping cleaner. T.76.

At step five, the ALJ found that Plaintiff was a younger individual (aged 33 years-old on the amended onset date) with at least a high school education and the ability to communicate in English. T.76-77. The ALJ relied on the testimony of the vocational expert ("the VE"), who stated that a person with Petitioner's vocational profile and RFC could perform the requirements of representative occupations such as furniture cleaner (medium, unskilled, SVP 2), of which there were 95,000 jobs nationally and 3,362 in the local region; laundry worker II (medium, unskilled, SVP 2), of which there were 40,606 jobs nationally and 2,684 in the local region; and laundry sorter (light, unskilled, SVP 2), of which there were 128,478 jobs nationally and 5,688 in the local region. T.77. Accordingly, the ALJ found that Plaintiff has not been under a "disability" as defined in the Act. T.77-78.

**V. Discussion**

    **A. Failure to Give "Good Reasons" For Not According Controlling Weight to Treating Source Opinion**

The Commissioner generally "recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant[.]" Green-Younger, 335 F.3d at 106; see also Clark v. Commissioner of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) ("The law gives special evidentiary weight to the opinion of the treating physician."). Under the "treating physician's rule," an ALJ will give "controlling weight" to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31–32 (2d Cir. 2004) (per curiam). "The factors that must be considered when the treating physician's opinion is not given controlling weight include: (I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark, 143 F.3d at 118 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). The Commissioner specifically states in her regulations, "We will always give *good reasons* in our notice of determination or decision for the weight we give [a

claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (emphasis supplied); see also McClaney v. Astrue, No. 10-CV-5421(JG)(JO), 2012 WL 3777413, at *16 (E.D.N.Y. Aug. 10, 2012) ("It does not suffice for an ALJ to undertake such analysis; she must also explain it with sufficient specificity 'to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'") (quoting Disarno v. Astrue, No. 06-CV-0461-JTC, 2008 WL 1995123, at *4 (W.D.N.Y. May 6, 2008) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. 1996)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *5). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

-7-

Here, Plaintiff's treating psychiatrist, Venkata Satti, M.D., provided an assessment of the impact of Plaintiff's mental impairments and cognitive deficits on his ability to perform work-related activities. Dr. Satti started treating Plaintiff on January 4, 2011, at which point she diagnosed him with bipolar I disorder, most recent episode mixed, severe, without psychotic features; impulsive control disorder, not otherwise specified ("NOS"); nicotine dependence; and antisocial personality traits. T.247. Dr. Satti, along with her psychiatric social worker Mirjana Dorozan ("Psych-SW Dorozan"), co-signed a "Medical Assessment of Ability To Do Work-Related Activities (MENTAL)" ("the Mental Assessment Form") on January 18, 2012. See T.294-98. In the area of "Making Occupational Adjustments", Plaintiff was found to be "[s]eriously [l]imited"[2] in being able to follow work rules, relate to co-workers, use judgment, deal with work stresses, and maintain attention/concentration; to have "[f]air" ability with regard to dealing with the public and functioning independently; and his ability to interact with supervisors was "[p]oor [o]r [n]one". T.294-25. Under "Making Performance Adjustments", Plaintiff was "[s]eriously [l]imited" in understanding, remembering, and carrying

---

[2] The form defined "[f]air" as when the patient's "[a]bility to function in this area is limited but satisfactory." T.294. "[s]eriously [l]imited" as the patient's "[a]bility to function in this area is seriously limited, but not precluded." Id. The form defined "[p]oor [o]r [n]one" as the patient having "[n]o useful ability to function in this area." Id.

-8-

out complex job instructions; and "[f]air" in terms of understanding, remembering, and carrying out detailed, but not complex job instructions, or simple job instructions. T.296. With regard to "Making Personal-Social Adjustments", Plaintiff was found to be "[s]eriously [l]imited" in relating productively in social situations and behaving in an emotionally stable manner; and "[f]air" in being able to maintain his personal appearance and demonstrate reliability. T.298.

In addition to completing the "the Medical-Mental Assessment Form", Dr. Satti and Psych-SW Dorozan annexed typewritten pages amplifying their responses to question #9 under "Making Occupational Adjustments" (T.295), question #4 under "Making Performance Adjustments" (T.295), and question #5 under "Making Social Adjustments" (T.297).

Psych-SW Dorozan referred Plaintiff to psychologist Richard Hoyt, Ph.D., to assess whether he suffers from auditory processing disorder. Dr. Hoyt evaluated Plaintiff on September 6 and 24, 2012, and issued a report dated October 12, 2012, noting that intelligence testing shows a verbal IQ of 59, performance IQ of 62, and a full scale IQ of 57. T.314.[3] Dr. Hoyt concluded that

---

[3]

When Plaintiff was given an IQ test at age fifteen, he achieved a verbal IQ of 71, a performance IQ of 68, and a full scale IQ of 67. T.300. During the test, he was "highly anxious" and "felt self depreciatory and inadequate"; out of frustration, he threw pieces of the test and slammed the picture-arrangement cards on the table. T.300-01.

Plaintiff's current level of intellectual functioning was in the range of "Mild Mental Retardation[,]" T.314, although he "does not come across as developmentally disabled[.]" T.315. Dr. Hoyt noted Plaintiff's history of physical and verbal abuse in his family of origin, as well as a history of being bullied due to his intellectual deficits, which contributed to his hypersensitivity to criticism and rejection. T.315. Dr. Hoyt agreed with the current diagnosis of Bipolar Disorder and suggested a diagnosis of Impulse Control Disorder, NOS. Id. Dr. Hoyt opined that Plaintiff is "developmentally disabled as well as seriously and persistently mentally ill[,]" and "could not be expected to function successfully in a competitive employment setting." T.316.

The ALJ gave "partial weight" to Dr. Satti's and Psych-SW Dorozan's opinions in the Mental Assessment Form. T.75. The ALJ accorded "little weight" to Dr. Hoyt's report. T.75. Plaintiff argues that the ALJ failed to properly apply the treating physician rule and did not give "good reasons" for declining to give "controlling weight" to these opinions. The Court agrees.

The ALJ discredited Dr. Satti's and Psych-SW Dorozan's detailed assessment of Plaintiff's impairments in the context of work-related activities because, according to the ALJ, Plaintiff is "capable of activities such as engaging in activities of daily living, fixing cars in a garage, and overseeing his own medical and psychiatric treatment." T.75. This reasoning is specious and

unsupported by the law or common sense. First, the ALJ did not define what he meant by "activities of daily living", but in the benefits context, they generally include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, [and] caring appropriately for your grooming and hygiene. . . ." Farina v. Colvin, No. 5:13-CV-1246, 2015 WL 235858, at *9 (N.D.N.Y. Jan. 15, 2015) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00C(1)). Plaintiff indicated, for instance, that he takes care of his own grooming, does some cooking and cleaning, does some childcare of his two young children, and sometimes shops but is "'lousy with change.'" T.288. Second, the ALJ mischaracterized the record insofar as the work on cars that Plaintiff performed was actually performed at his home, in his own garage, not at an automotive repair business. T.248.

The ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment. "[I]t is well-settled that the ability to perform basic activities of self-care activities 'do not by themselves contradict allegations of disability[.]'" McGregor v. Astrue, 993 F. Supp.2d 130, 142 (N.D.N.Y. 2012) (quoting Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000)). As the Second Circuit has "stated on numerous occasions[,] . . . 'a claimant need

-11-

not be an invalid to be found disabled' under the Social Security Act." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quotation omitted). Certainly, Plaintiff's performance of basic adaptive activities in his own home, or at a store where he has very limited interaction with other people, is not probative of his abilities to, e.g., follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors, all areas in which Dr. Satti assessed that he was seriously limited by his mental impairments.

Likewise, Plaintiff's ability to fix some cars in a garage, by himself, for an unspecified duration of time, does not undermine Dr. Satti's opinion regarding Plaintiff's limitations in terms of performing work-related activities on a full-time basis in a competitive work environment.

Finally, the ALJ's comment that Plaintiff "oversees his own medical and psychiatric treatment" is not relevant to determining whether Plaintiff is disabled, since attending medical or counseling appointments even on a regular basis is not tantamount to being able to perform work-related activities on a full-time or equivalent basis in a normal workplace. Furthermore, it unfairly penalizes Plaintiff for pursuing treatment for his serious mental impairments. Moreover, this proffered reason is not supported by substantial evidence in the record. Plaintiff testified that he is

unable to administer his own medications and relies on his wife for assistance in removing his pills from their bottles and organizing them in a pill-container. T.31-33. When he has attended appointments in new places, his wife or mother accompanied him. See T.246, 281, 286, 313. Indeed, his mother accompanied him to his appointment with Dr. Hoyt.

Turning to Dr. Hoyt's opinion, the ALJ, as noted above, accorded "little weight" to it. The ALJ rejected Dr. Hoyt's assessment that Plaintiff that "could not be expected to function successfully in a competitive employment setting," based on the fact that Plaintiff allegedly "has been able to work at substantial gainful activity levels in 2001, 2002, 2003, 2007, and 2008[.]" T.75 (citation omitted). First, the cited earnings occurred in years that all precede Plaintiff's onset date of May 1, 2009. Second, Plaintiff's jobs were of short duration and most ended due to his impulsivity and inability to control his anger. See T.180-83, 286, 306 (informing his psychiatrist, Dr. John Bezirganian, on June 4, 2010, that he had lost over 10 jobs due to his anger). The ALJ's reason, which relies on a selective reading of the record, is not a "good reason." See Tim v. Colvin, No. 6:12-cv-1761(GLS/ESH), 2014 WL 838080, at *8 (N.D.N.Y. Mar. 4, 2014) ("The only reason articulated by ALJ Greener was that J. Dombrocia's opinions were supported by 'mental status examinations in the record.' These mental status examinations, apparently, are the same two instances

relied on by ALJ Greener to discount opinions of treating psychiatrist Dr. Raju. Based on the earlier cherry-picking analysis, this cannot constitute a good reason.") (citing Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir. 1983)); Nix v. Astrue, No. 07-CV-344, 2009 WL WL 3429616, at *9 (W.D.N.Y. Oct. 22, 2009) ("[E]ven if the opinions were based on subjective complaints, this would not constitute a 'good reason' for dismissing the opinions of the treating physicians: first, the plaintiff's subjective complaints were improperly discounted based on an unsupported credibility finding, and second, . . . a plaintiff's application for disability cannot be rejected simply because it is based on subjective complaints.").

The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand[,]" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). The ALJ here has not provided "good reasons" for the less-than-controlling weight given to the treating source opinions of Dr. Satti and Dr. Hoyt, and therefore this case must be remanded for that purpose. See, e.g., Richardson v. Barnhart, 443 F. Supp.2d 411, 424-25 (W.D.N.Y. 2006) (remanding for a second time where the ALJ's decision "did not give good reasons, supported by substantial evidence, for failing to assign controlling weight to the opinion of a treating source" and the ALJ "failed to follow the treating physician rule by ignoring substantial evidence of record

-14-

and by committing legal error in his analysis of [the treating physician]'s opinions"); see generally Halloran, 362 F.3d at 33 (stating that courts "[should] continue remanding when [they] encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

**B.    Remedy**

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . ., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Courts have held that a remand pursuant to the fourth sentence of Section 405(g) is appropriate in cases where the Commissioner's decision is the product of legal error. See, e.g., Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where . . . the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.") (internal quotation marks omitted). Although it is less typical, reversal without remand is the appropriate disposition when there is "persuasive proof of disability" in the record, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and further proceedings would be of no use as there is no reason to conclude that additional evidence might support the Commissioner's claim that the

claimant is not disabled, Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004).

Here, none of the regulatory factors support a decision not to afford controlling weight to treating psychiatrist Dr. Satti's Mental Assessment, which is well supported by the evidence of record and is consistent with the report of examining psychologist Dr. Hoyt, whom unlike the consultative psychologist, administered intelligence and psychological tests to Plaintiff. When the vocational expert ("the VE") was asked to include one or more of the limitations found by Dr. Satti (e.g., poor to no ability to interact with supervisors or being off-task 20% of the time) in his hypothetical claimant profile, the VE testified that Plaintiff could not perform his past relevant work or any other work that exists in the national economy. T.40, 41. The medical and academic records substantiate Dr. Satti's finding that Plaintiff has experienced persistent deficits in adaptive functioning, beginning before age 22, which "denote[ ] an inability to cope with the challenges of ordinary everyday life." Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing Diagnostic and Statistical Manual of Mental Disorders-IV 42 (4th ed. 2000) (quoted in Carrube v. Astrue, No. 3:08-CV-0830(FJS)(VEB), 2009 WL 6527504, at *5 (N.D.N.Y. Dec. 2, 2009)); West v. Comm'r of Soc. Sec. Admin., 240 F. App'x 692, 698 (6th Cir. 2007) (unpublished opn.) ("Adaptive

functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").

"Substantial evidence exists in the record to warrant giving deference to the opinions of Plaintiff's treating psychiatrist, and when that deference is accorded, a finding of disability is compelled." Beck v. Colvin, No. 6:13-CV-6014(MAT), 2014 WL 1837611, at *15 (W.D.N.Y. May 8, 2014) (citing Spielberg v. Barnhart, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . .")). In the present case, further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. See Parker, 626 F.2d at 235.

**V. Conclusion**

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Dkt #8) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #7) is granted and the Commissioner's decision is reversed and remanded for calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: August 17, 2015
Rochester, New York